No. 13,720.

City and County of Denver v. Litel et al.
(52 P. [2d] 1145)

Decided December 16, 1935.

Mr. James D. Parriott, Mr. Frederick P. Cranston, for plaintiff in error.

Mr. T. E. Munson, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

In this opinion, plaintiff, City and County of Denver, will be designated as Denver, and reference will be made to the defendants, Logan county and its board of county commissioners, as Logan county.

Section 8914, C. L. 1921, is as follows: "If any person shall bring and leave any pauper or paupers in any county in this state, wherein such pauper is not lawfully settled, knowing him or them to be paupers, he shall forfeit and pay the sum of two hundred dollars for every such offense, to be sued for and recovered by and to the use of such county, by action of debt, before any court having competent jurisdiction; and the suit may be brought in the county where the pauper was so brought and left, and the process may be directed to and served by any proper officer in any county in this state."

Denver brought this action against Logan county, its board of county commissioners, and the commissioners individually, under the provisions of the above quoted statute, to recover $1,800, alleging that nine paupers

were brought to and left in Denver on or about January 12, 1934, by Logan county, said county then knowing them to be paupers; that they were not lawfully settled in Denver at the time but were in fact residents and citizens of Logan county. It is to be noted that it is not stated in the complaint, or shown by the evidence, that the persons alleged to have been so transported and left, ever became a charge upon Denver. The complaint set up a separate cause of action for each alleged pauper. The answer denied that these persons were residents of Logan county and alleged them to be residents of Denver; denied that they were paupers, and further denied that Logan county brought or caused them to be brought to, and left in, Denver. The replication is a general denial of the answer. On the issues thus made, the case was tried to the court without a jury, and judgment entered in favor of Logan county against Denver, and for costs. To this judgment, error is assigned.

The alleged paupers were one J. Mahler, his wife and seven children. In 1925, Mahler bought a home located at 3548 Brighton Boulevard in Denver, where he lived with his family until 1928, when he rented a farm in Logan county, moved his family there, and operated the place as a tenant. Three of his children were born in Logan county. He and his wife worked in the beet fields, and during the time he resided there he supported himself and family, making about $1,200 in 1933. On November 25, 1933, Mahler, by reason of a fight in which he engaged, was arrested and put in jail at Sterling, where he remained because of his inability to furnish bail. The second or third day thereafter, one of defendant county commissioners, Harlan, talked to him and asked him if he wanted to go to Denver, saying, "we are going to send you up there." Weeks later Mahler requested the commissioners to supply some bedding and other help for his family. This was refused. After another week or so, one of the commissioners went to the jail and asked him if he wanted to be released. He re-

plied that he was sick, and would be glad to get out; that if he could get back to Denver where he was acquainted, he could get work and would not have to pay rent. The commissioner agreed to, and did, ship his furniture to Denver. On the following day, with ten dollars borrowed from a friend, Mahler paid the railroad fare for himself and family to Denver. The family was taken from Iliff to Sterling, by a relief worker, and in September, about $20 had been supplied the family from relief funds. During all this time, Mahler owned the home in Denver, but had received no rent, and was far behind in payments of interest and taxes. The above is the substance of the testimony given by Mahler, the only witness at the trial.

▆▆ The statute on which this action is based, is penal in character and therefore is to be strictly construed. To sustain the charge here made, it must clearly be shown that the person transported was a pauper within the legal definition of that word; that his legal domicile was in Logan county, and not in Denver; that the person charged had such knowledge of these facts; that it could be implied, if not expressed, that he knowingly and intentionally took the pauper from Logan county to Denver, with the intention of relieving one county of the charge and placing it upon the other. The element of intention must be present before the statute is operative.

▆▆ If the evidence does not support the charge of transporting the persons, then it is immaterial whether they were paupers or not, and we are not concerned about their domicile. It is undisputed that Mahler paid the railroad fare for himself and family; that he said he could get work in Denver and would not have to pay rent. It appears that unless he was set at liberty, with an opportunity to work, the family would be a charge on Logan county. To meet an apparently inevitable condition confronting the family, and to prevent its members from becoming paupers, Logan county

was able to procure Mahler's release on his personal recognizance to do the thing he said he could do, namely, support his family in Denver. He was not forced to go to Denver, but was released in Logan county to carry out his desire of moving to that city where he could procure work. This he did, transporting himself and family, at his own expense. The fact that Logan county bore the expense of shipping his furniture from Sterling to Denver, is, of itself not sufficient to sustain the necessary element of intention to relieve Logan county of the charge for the care of these persons, and place it on Denver. It is not clearly shown that Logan county brought the persons to Denver and left them there; consequently it is not necessary that we discuss the other elements of residence and pauperism. The case was determined by the trial court on evidence amply sufficient to sustain its finding, which was adverse to the charge made by plaintiff, and under the well settled rule, such finding will not be disturbed.

The judgment is right and is affirmed.

Mr. Justice Campbell and Mr. Justice Bouck not participating.